UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,      )
    )
    Plaintiff,     )
    )
    v.     )      No. 2:26-cv-01458
14.259 ACRES OF LAND, MORE OR     )
LESS, SITUATE IN DOÑA ANA     )
COUNTY, STATE OF NEW NEXICO;     )
CATHOLIC DIOCESE OF LAS CRUCES; )
AND DOÑA ANA COUNTY     )
TREASURER,     )
    )
    Defendants.     )
_____ )

**DEFENDANT ROMAN CATHOLIC DIOCESE OF LAS CRUCES'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO DEPOSIT FUNDS INTO COURT REGISTRY**

This case concerns the United States Government's attempted exercise of its power of eminent domain to condemn property of Defendant Roman Catholic Diocese of Las Cruces (the Diocese) for the purpose of building sections of a barrier wall along the southern border of the United States. The Government's proposed taking will substantially burden the free exercise of religion by the Diocese, its parishioners, and the other faithful who seek to commune with God on Diocesan property. The Diocese therefore intends to raise defenses to the intended taking under the First Amendment's Free Exercise Clause and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb *et seq.* The Government's motion seeks leave to deposit with the Court estimated just compensation, a preliminary step necessary to effectuate an immediate and automatic transfer of title to the Government under to the Declaration of Taking Act, 40 U.S.C. §§ 3114 *et seq.* By triggering this automatic process the Government attempts to pretermit the

First Amendment and RFRA defenses that the Diocese intends to raise.  Accordingly, this Court should deny the Government's request for leave to deposit and defer any transfer of title until the Diocese is fully heard regarding those defenses.

## I.      The Government Seeks to Condemn Diocesan Land that Is Part of a Holy Site.

The Diocesan property that the Government seeks to condemn is located at the base of Mount Cristo Rey in Sunland Park, New Mexico.  Atop the mountain sits a 29-foot-tall limestone statue of Jesus Christ that "serves as a shrine to thousands of faithful in the El Paso and Southern New Mexico area."  MtCristoRey.com, https://perma.cc/2DKF-GQ55 (last visited May 7, 2026). In 1933, a local parish priest, Father Lourdes Costa, "envisioned erecting a monument at the summit of this glorious mountain" and "preached to [his] congregation sharing his vision of a cross on the mountaintop."  *Id.*  At Father Costa's urging, the Roman Catholic Diocese of El Paso, Texas, purchased the property in question and employed the world-famous sculptor Urbici Soler to realize Father Costa's vision.[1]  *Id.*  In 1940, the monument that sits atop Mount Cristo Rey today was completed.  *Id.*

The mountaintop shrine is the site of annual pilgrimages.  On the feast day of Christ the King each fall, as many as 40,000 faithful climb Mount Cristo Rey to "marvel at the beauty of the monument and the view offered from the summit" and to participate in a mass.  *Upcoming Events*, MtCristoRey.com, https://perma.cc/AQ9C-2D9V (last visited May 7, 2026).  "Some of the faithful make the 5 mile journey barefooted, while fewer make the ascent on their knees."  *Id.*  Thousands of faithful also ascend the mountain as part of a separate annual pilgrimage, the most recent of

---

[1] The Diocese of Las Cruces was established in 1982, assuming jurisdiction over the New Mexico counties that had previously been part of the Diocese of El Paso.  *Beginnings*, Roman Catholic Diocese of Las Cruces, https://tinyurl.com/2brnpckr (last visited May 7, 2026).

which recently took place above "an active construction zone," as the Government began work constructing the border wall on nearby property.  Martha Pskowski, *Blasting Begins on Mount Cristo Rey*, El Paso Times (Apr. 1, 2026), https://perma.cc/3KC2-SEZ3.

**II.     Granting Leave to Deposit Would Prevent the Diocese from Being Fully Heard on Its First Amendment and RFRA Defenses.**

Over the past year, the Government has repeatedly sought the Diocese's consent to condemn the property in question.  The Diocese has consistently conveyed that condemnation of the property would substantially burden the free exercise of religion by the Diocese and the faithful who seek to commune with God on Mount Cristo Rey.  As the Diocese explained in a public comment to the U.S. Customs and Border Protection's proposed plans for the property:

> The erection of a border wall through or along this holy site could irreparably damage its religious and cultural sanctity, obstruct pilgrimage routes, and transfer sacred space into a symbol of division.  Any federal action to seize this land, construct physical barriers, or impede access to Mounty Cristo Rey would constitute a significant infringement on religious freedom and the rights of worship, which are protected under both the First Amendment to the U.S. Constitution and the Religious Freedom Restoration Act.

Ex. A.

In spite of these concerns, the Government is pressing forward with its plans and is insisting on effecting the condemnation through the expedited procedures provided by the Declaration of Taking Act (Taking Act).  Under that Act, the "filing of a declaration of taking and depositing in the court . . . the estimated compensation stated in the declaration" automatically causes "title to the estate or interest specified in the declaration" to "vest[] in the Government" and the property in question to be "condemned and taken for the use of the Government."  40 U.S.C. § 3114(b)(1)–(2).  The Taking Act thus "enables the United States to acquire title simply by depositing funds 'for or on account' of the just compensation to be awarded to the owners, rather than making

3

payment pursuant to a court order." *United States v. Dow*, 357 U.S. 17, 23 (1958); *Likins-Foster Honolulu Corp. v. Comm'r of Internal Revenue*, 417 F.2d 285, 289 (10th Cir. 1969) ("In condemnations proceedings, as provided by [40 U.S.C. § 3114], title . . . vest[s] in the United States upon the filing of the declaration of taking and the payment into court of the estimated compensation.").

Thus, if this Court grants the Government's motion for leave to deposit, the Diocese would not be able to assert its First Amendment and RFRA defenses until after the Government has effected a taking and title has vested in the United States.  This Court should not permit this incursion on religious liberty before the Diocese's First Amendment and RFRA defenses are even entertained.  Instead, it should deny the motion and defer any transfer of title until the Diocese is fully heard regarding those defenses.[2]

The Diocese acknowledges that the Taking Act does not expressly contemplate the denial of leave to deposit estimated just compensation under these fairly unusual circumstances.[3]  But

---

[2] The Government argues that its motion, if granted, will not affect the Diocese's substantial rights because it will "only effectuate[] transfer of title," and this Court "separately will determine when possession of the condemned property interest will transfer to the United States."  Mot. 2–3, ECF No. 6.  But that is disingenuous. The Government routinely argues in other condemnation cases that it is entitled to possession merely because it has already taken title.  *See, e.g.*, Ex. B., Pl.'s Partially Opposed Mot. For Order of Immediate Possession 3, *United States v. 0.546 Acres of Land, More or Less, Situate in Starr Cnty.*, No. 25-cv-188 (S.D. Tex. June 4, 2025), ECF No. 25 ("Because it Acquired this Property Under the Declaration of Taking Act, the United States is Entitled to Immediate Possession.").

[3] Although First Amendment and RFRA defenses to condemnation proceedings are rare, they are not unheard of.  Indeed, the Tenth Circuit has reached the merits of a RFRA defense to a condemnation proceeding.  *Thiry v. Carlson*, 78 F.3d 1491, 1495–96 (10th Cir. 1996).  And other appellate courts have vacated district court decisions that gave insufficient consideration to religious landowners' First Amendment objections to condemnation proceedings.  *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 872–73 (2d Cir. 1988); *Pillar of Fire v. Denv. Urb. Renewal Auth.*, 509 P.2d 1250, 1254–55 (Colo. 1973); *see also Chabad Lubavitch of the Beaches, Inc. v.*

4

Case 2:26-cv-01458-KG-GBW   Document 12   Filed 05/08/26   Page 5 of 8

that is of no moment. "RFRA is no ordinary statute," but a "'super-statute.'" *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (citation omitted), *aff'd*, 573 U.S. 682 (2014). RFRA "applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after" RFRA's date of enactment. 42 U.S.C. § 2000bb-3(a). It therefore "cut[s] across all other federal statutes . . . and modif[ies] their reach." Michael Stokes Paulsen, *A RFRA Runs Through It: Religious Freedom and the U.S. Code*, 56 Mont. L. Rev. 249, 253 (1995). In *Hobby Lobby*, for example, the Supreme Court held that RFRA required the government to adopt a less restrictive means of implementing the Patient Protection and Affordable Care Act (ACA)'s contraceptive mandate by permitting employers with religious objections to "self-certify" their opposition to "providing coverage for particular contraceptive services" and for such employers' insurance issuer or third-party administrator to separately provide coverage. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730-31 (2014). This procedure existed nowhere in the ACA's statutory text and was available only to religious nonprofits under the statute's implementing regulations. *See id.* at 731. But the Court nevertheless held that RFRA required the provision of that accommodation to employers with religious objections. *Id.*

A similar result obtains with regard to the Government's motion for leave to deposit. Although in ordinary condemnation cases the Taking Act permits immediate and automatic transfer of title to the United States upon filing of declaration of taking and deposit of estimated just compensation, 40 U.S.C. § 3114(b)(1), that is not the case in circumstances like these, where

---

*Inc. Vill. of Atl. Beach*, No. 22-cv-4141, 2022 WL 22946691, at *10 (E.D.N.Y. Sept. 6, 2022) (preliminarily enjoining condemnation of a religious landowner's property based on First Amendment defense).

a religious landowner asserts defenses under the First Amendment or RFRA to the condemnation. Were it otherwise, the Taking Act would automatically permit at least temporary transfer of title and potentially irreparable injury to landowners' exercise of religion without any consideration of their defenses.  Under the circumstances presented here, RFRA modifies the reach of the Taking Act and requires transfer of title to be deferred until the Diocese's First Amendment and RFRA objections are ventilated.

## CONCLUSION

For all of the foregoing reasons, the Diocese respectfully requests that this Court deny the Government's motion for leave to deposit estimated just compensation or otherwise defer transfer to the United States of title to the property in question until after the Diocese's First Amendment and RFRA defenses are fully resolved.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Seth Wayne*

Seth Wayne
Jonathan L. Backer*
Mary B. McCord**
William Powell*
INSTITUTE FOR CONSTITUTIONAL
 ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, DC  20001
(202) 662-4912
sw1098@georgetown.edu

*/s/ Kathryn Brack Morrow*

Kathryn Brack Morrow
MANN MORROW, PLLC

6

1730 Tierra de Mesilla, Suite 4
Las Cruces, NM 88005
Phone: 575-440-0300
Katy.Morrow@MannMorrow.com


*Admitted pro hac vice*
**Pro hac vice application forthcoming*

*Attorneys for Defendant Roman Catholic Diocese of Las Cruces*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2026, I electronically filed the foregoing with the Clerk of the Court and served a copy upon all counsel of record registered to receive notice via the Court's CM/ECF system.

*/s/ Seth Wayne*
Seth Wayne
