UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA )
)
Plaintiff, )
)
vs. )  CIVIL NO. 2:26-cv-01458-KG-GBW
)
14.259 ACRES OF LAND, MORE OR LESS, )
)
SITUATE IN DOÑA ANA COUNTY, STATE OF )
)
NEW MEXICO; AND THE CATHOLIC DIOCESE )
)
OF LAS CRUCES, et al. )
)
Defendants.

**UNITED STATES OF AMERICA'S [OPPOSED] MOTION
FOR ORDER OF IMMEDIATE POSSESSION
[Expedited Consideration Requested]**

Plaintiff, United States of America, respectfully moves for an order requiring all defendants

to this action and all persons in possession or control of the property described in the Complaint

in Condemnation and Declaration of Taking (ECF Nos. 1, 1-2) to immediately surrender

possession of the condemned estate to the United States.

**I. INTRODUCTION**

On January 20, 2025, the President issued an Executive Order directing the Secretary of

the Department of Homeland Security to take all appropriate action, including construction of

physical barriers, to secure the southern border of the United States.  Exec. Order No. 14165, 90

Fed. Reg. 8467 (2025).  Congress provided funding for border barrier along the southwest border

in  and around El Paso, Texas. The Act of Congress approved July 4, 2025, as Public Law 119-21,

tit. IX, sec. 90001, 139 Stat. 72, 357-58, appropriated the funds that shall be used for the taking.

1

The United States plans to construct new border barrier in Doña Ana County, New Mexico, that Congress specifically designated to be constructed, in an area where there is a gap in the existing border wall infrastructure. The tracts to be acquired in this case are part of the project and identified as EPT-STN-2001, EPT-STN-2001-1, and EPT-STN-2001E in the Complaint in Condemnation (ECF. No. 1) and Declaration of Taking (ECF. No. 2). This specific area is needed for construction of border barrier to secure the border with Mexico and deter smuggling and illegal entry. Pl. Ex. A, Enriquez Decl. ¶ 5. As explained below, time is of the essence.  The United States has contracted with construction companies to perform the required work, issued notices to proceed and will incur significant monetary penalties if there is a delay. Enriquez Decl. ¶¶ 7, 10.

On the other hand, there will be no impact on the landowner, the Catholic Diocese of Las Cruces ("Diocese").  Access to and use of the shrine at the summit of Mount Cristo Rey will continue without interruption. Enriquez Decl. ¶ 8. Furthermore, the land and easement being acquired by the United States are located at the base of the mountain on the southern border, which is not accessible to the public, and the taking will not interfere with the marked trail used for pilgrimages to the shrine of Cristo Rey. Enriquez Decl. ¶ 8.

Under the Declaration of Taking Act, the United States is entitled to immediate possession of the property once the estimate of just compensation is deposited with the court.  The Supreme Court has reaffirmed that the Declaration of Taking Act immediately confers to the United States title and the right to possession. *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1 (1984). The Diocese has no legal basis to prevent the United States from acquiring title. *See* Pl.'s Mot. to Deposit, ECF No. 6, and Reply in Support, ECF No., 20. Likewise, the Diocese has no legal basis to prevent the United States from acquiring possession to the condemned land. The United States has repeatedly conveyed to the Diocese that it may continue to access and use the remainder

2

property, including the shrine at the summit of Mount Cristo Rey, without any impact from the planned construction. Enriquez Decl. ¶ 8.

For these reasons, it is respectfully requested that this Court enter an Order transferring immediate possession of the condemned property to the United States.

## II. BACKGROUND FACTS

As described in the Declaration of Taking, the United States is acquiring 11.822 acres of land in fee on tract EPT-STN-2001; 1.554 acres of land in fee on tract EPT-STN-2001-1; and a non-exclusive, perpetual and assignable easement, excluding subsurface water and mineral rights, across 0.883 acres of land on tract EPT-STN-2001E (collectively, the "Condemned Land"). The Condemned Land is part of a larger site of 268.36 acres situated in Doña Ana County, New Mexico, and owned by the Catholic Diocese of Las Cruces ("Diocese"). The site is home to Mount Cristo Rey, a mountain well-known for its large statue of Jesus Christ at the summit and views of the border between the United States and Mexico. The Condemned Land is located along the southern edge of the site, at the base of the mountain and approximately 0.25 miles away from the shrine of Cristo Rey, [1] which is indicated by the blue circle on the Google Earth image below (Decl. of Taking, Sched. D, ECF No. 2-4):

---

[1] The straight blue lines represent the boundary of the larger parcels owned by the Diocese.



Pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114, and Federal Rule of Civil Procedure ("Rule") 71.1. (formerly Rule 71A), the United States filed a Complaint (ECF No. 1), Declaration of Taking (ECF No. 2) and a motion for leave to deposit the estimate of just compensation in the amount of One Hundred Eighty-Three Thousand Seventy-One and 00/100 Dollars ($183,071.00) in the Registry of the Court (ECF No. 6). The United States seeks to acquire a fee simple interest in property identified as Tracts EPT-STN-2001 and EPT-STN-2001-1,[2] and a non-exclusive, perpetual access easement in Tract EPT-STN-2001E[3] to construct, install, operate, and maintain border barrier, including gates and power to operate such gates, as well as roads. *See* ECF. No. 2, Declaration of Taking, Schedules "B" and "D". The *One Big Beautiful Bill*

---

[2] The tracts taken in fee (EPT-STN-2001 and 2001-1) are indicated in the image above by the red-shaded area.

[3] The access easement is indicated in the image above by the yellow diagonal line.

*Act* approved July 4, 2025 appropriated funding to acquire the interest sought in this action. *See* Declaration of Taking, Schedule "A" (ECF No. 2-1); *see also One Big Beautiful Bill Act, 2025,* Public Law 119-21, tit. IX, sec. 90001, 139 Stat. 72, 357-58.

### III. LEGAL ARGUMENT

**A.      *Under the Declaration of Taking Act, the United States is Entitled to Immediate Possession of the Condemned Land upon Deposit of the Estimate of Just Compensation. Neither the transfer of possession nor the transfer of title impact the Diocese's free exercise of religion.***

On May 7, 2026, the United States initiated this case by filing a Complaint (ECF No. 1), Declaration of Taking (ECF No. 2) and Motion for Leave to Deposit Funds into Court Registry ("Motion to Deposit") (ECF No. 6), as required under the Declaration of Taking Act ("Act"), 40 U.S.C. § 3114 (formerly 40 U.S.C. § 258a). On May 8, 2026, the Diocese filed a response in opposition to the Motion to Deposit, asserting that the Court should deny or defer ruling on the Motion to Deposit until it can hear the Diocese's objections to the taking. On May 20, 2026, the United States filed its Reply in Support of the Motion to Deposit (ECF No. 20), and it is prepared to make the deposit upon the Court's entry of an order granting said motion. The transfer of title is immediate upon the filing of the declaration of taking and deposit of estimated just compensation. 40 U.S.C. §3114(b)(1); *see also Catlin v. United States*, 324 U.S. 229, 238 (1945) (holding that a landowner may not delay or prevent the vesting of title). The purpose of the Declaration of Taking Act is to give the Government immediate possession of the property and give the owner immediate compensation, in the form of estimated compensation, in return for title to the land. *United States v. Miller*, 317 U.S. 369 (1943). The Act specifically provides that upon the filing of the declaration of taking, "the court may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner . . . ". 40 U.S.C. § 3114(d)(1).  As the Supreme Court explained,

> [t]he purpose of the statute is twofold. First, *to give the Government immediate possession of the property* and to relieve it of the burden of interest . . . .
> Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property.

*Miller*, 317 U.S. at 381 (emphasis added).

The Supreme Court reaffirmed that the Declaration of Taking Act immediately confers to the United States title and a right to possession in *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1 (1984). There, it reviewed the methods by which the United States may appropriate property, primarily comparing use of a declaration of taking with a "straight-condemnation" proceeding. *Id.* at 3-5. In a "straight condemnation," the United States files only a complaint in condemnation and acquires title only after the determination and payment of just compensation. *Id.* at 4. In contrast, the Court noted that the Declaration of Taking Act is "[a] more expeditious procedure . . . ". *Id.* The Court held that upon the filing of a declaration of taking and deposit of estimated just compensation, "[t]itle and right to possession thereupon vest immediately in the United States." *Id.* at 5. Further distinguishing a "straight-condemnation" case from one brought under 40 U.S.C. § 3114, the Court explained that the adoption of the Declaration of Taking Act was "for the purpose of affording the Government the option of peremptorily appropriating land prior to final judgment, thereby permitting immediate occupancy . . . ". *Id.* at 12. Finally, as stated in *Narramore v. United States*, Congress enacted the Declaration of Taking Act "[t]o give the Federal Government immediate possession of condemned property and to avoid delays in federal construction projects…". 960 F.2d 1048, 1050 (Fed. Cir. 1992).

A district court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession," (40 U.S.C. §3114(d)(1)) but it has no jurisdiction to "refuse the requested order of possession" under the Act. *In re United States*, 257

6

F.2d 844, 848 (5th Cir. 1958); *see also United States v. Cobb*, 328 F.2d 115, 116 (9th Cir. 1964) (citing *In re United States* and finding that the district court was not empowered to deny the Government's motion for possession or set aside the declaration of taking).

The Diocese asserts that this condemnation would "substantially burden the free exercise of religion by the Diocese and the faithful" who visit Mount Cristo Rey. Diocese Resp. Mot. to Deposit 3, ECF No. 12. This statement is unsupported by the facts. As shown in the image and survey included in the Declaration of Taking (and also provided to the Diocese as part of CBP's January 2026 offer to purchase the Condemned Land), the area to be acquired in fee runs adjacent to the U.S.-Mexico border and is not near the statue. Decl. of Taking, Sched. D, ECF No. 2-4. The non-exclusive access easement also is not located near the shrine. *Id.*

Accordingly, the United States is entitled to an order transferring possession of the Condemned Land to the United States upon deposit of the estimate of just compensation.

**B.     *The United States Needs Immediate Possession in Order to Meet the Congressional Directive to Construct Fencing in the El Paso Sector and the Executive Order to Secure the United States' Southern Border.***

Congress mandated that the Department of Homeland Security ("DHS") achieve and maintain operational control of the international land border between the United States and Mexico.  The Secure Fence Act of 2006, Pub. L. 109-367, § 2, 120 Stat. 2638 (Oct. 26, 2006). On January 20, 2025, the President signed Executive Order 14165, directing the Secretary of DHS to "take all appropriate action to deploy and construct temporary and permanent physical barriers to ensure complete operational control of the southern border of the United States." Exec. Order No. 14165, 90 FR 8467 (2025).  As part of achieving operational control of the border, Congress provided DHS with funding for this project, including appropriating $46.55 billion for construction

of border infrastructure. *One Big Beautiful Bill Act, 2025, Pub. L.* 119-21, tit. IX, sec. 90001, 139 Stat. 72, 357-58 (2025).

Consistent with Congress' mandate that DHS achieve and maintain operational control of the border and the President's Executive Order, the United States is requesting immediate possession of the Condemned Land to meet the congressional directive. The construction of border barrier on the Condemned Land is needed to improve security along the border of the United States. Enriquez Decl, ¶¶ 2, 5. More specifically, the United States needs immediate possession in order to proceed with construction, installation, operation and maintenance of a border barrier, including gates, power lines and roads in Doña Ana County, New Mexico.

The United States has awarded task orders and issued notices to proceed with material acquisition, fabrication, construction, and other activities related to border barrier construction. Enriquez Decl. ¶ 7. Under the Declaration of Taking Act, the United States is entitled to immediate possession of the condemned estate once the Declaration of Taking is filed and the estimate of just compensation is deposited with the Court. *Miller*, 317 U.S. at 381; *see also Kirby Forest Indus., Inc.*, 467 U.S. at 5. The United States has already completed the filing of the Declaration of Taking (ECF No. 2) and is awaiting the Court's ruling on its Motion to Deposit (ECF No. 6). As stated in its briefing on the Motion to Deposit, transfer of title does not impact the Diocese's right to assert defenses to the taking. Pl.'s Mot. for Leave to Deposit Funds into Court Registry, ECF No. 6 ¶¶ 5, 8; Pl.'s Reply 3-5, ECF No. 20.

Likewise, transfer of possession will not impact the landowner's right to contest just compensation at a later date, but it will allow the United States the opportunity to complete the necessary construction to satisfy Congress' mandate and comply with the President's Executive Order to enhance the security at the nation's southern border. *See* Enriquez Decl., ¶¶ 5, 11. In

addition, the United States will incur significant monetary penalties arising from a delay in contract performance if possession to the Condemned Land is not transferred promptly. Enriquez Decl. ¶ 10.

Furthermore, the transfer of possession to the United States will not impact the Diocese's access or use of Mount Cristo Rey. Enriquez Decl. ¶ 8. This site, home to a large statue of Jesus Christ, will be accessible in the same manner as it had been prior to the taking. In fact, the area of land being acquired by the United States is not accessible to the public, and the taking will not interfere with the marked trail used for pilgrimages to Mount Cristo Rey. Enriquez Decl. ¶ 8.

Because of the United States' demonstrated need for immediate access to complete a congressionally-authorized purpose and the lack of the acquisition's impact on the use of Mount Cristo Rey, this Court should grant immediate possession of the Condemned Land to the United States, subject to the deposit of the estimate of just compensation.

### C. Defendant's Objections to the Government Project under the Religious Freedom Restoration Act and First Amendment are not Valid Defenses to the Taking.

In statements to the press and in its Response to the United States' Motion to Deposit (ECF No. 12), the Diocese describes the historical and religious significance of its property as well as its opposition to the government project in general,[4] neither of which are a defense to the taking or grounds to deny the government's motion for immediate possession..

The only permitted challenges to a federal condemnation action are (1) whether the acquisition was authorized by Congress and (2) whether it was for a public purpose. *United States v. 162.20 Acres of* Land, 639 F.2d 299, 303 (5th Cir. 1981) ("The sole defense which may be raised

---

[4] The Diocese alleges that the taking "will substantially burden the free exercise of religion by the Diocese, its parishioners, and the other faithful who seek to commune with God on Diocesan property. The Diocese therefore intends to raise defenses to the intended taking under the First Amendment's Free Exercise Clause and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb *et seq."* Diocese Resp. to Pl.'s Motion to Deposit 1, ECF No. 12.

against the condemnation itself is that of lack of authority to take in the petitioner."); *see also* *Berman v. Parker*, 348 U.S. 26, 32-33, 35 (1954) ("[T]he legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation . . . . This principle admits of no exception merely because the power of eminent domain is involved.") (concluding that public purpose is determined based on the project as a whole, not parcel by parcel).

In this case, the Secure Fence Act of 2006, Pub. L. 109-367, § 2, 120 Stat. 2638 (Oct. 26, 2006), clearly identifies the public purpose for this acquisition as the construction and operation of border wall infrastructure, and Congress has appropriated funds for this congressionally-authorized public purpose. Accordingly, there is no basis for a challenge to the Federal Government's sovereign authority to acquire land through condemnation under the circumstances present in this case.

Eminent domain is an innate right of the sovereign, limited only by the Fifth Amendment requirement that just compensation be paid or as otherwise constricted by the legislature. *United States v. Carmack*, 329 U.S. 230, 236-37 (1946) ("The power of eminent domain is essential to a sovereign government. If the United States has determined its need for certain land for a public use that is within its federal sovereign powers, it must have the right to appropriate that land."); *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 587 (1923) ("The power of eminent domain is not dependent upon any specific grant; it is an attribute of sovereignty, limited and conditioned by the just compensation clause of the Fifth Amendment."); *Bauman v. Ross*, 167 U.S. 548, 574 (1897) ("The right of eminent domain . . . 'is the offspring of political necessity, and is inseparable from sovereignty unless denied to it by its fundamental law.'"). Neither the First Amendment nor RFRA supersede this inherent right. *See e.g. Prater v. City of Burnside*, 289 F.3d 417, 428 (6th Cir. 2002) ("The Free Exercise Clause . . . does not entitle a religious organization

to special benefits. . . . Accordingly, the City's refusal to abandon the dedicated public roadway in favor of the Church did not, in and of itself, burden the Church's rights under the Free Exercise Clause."); *see also United States v. Petty Motor Co.*, 327 U.S. 372, 376 (1946) (holding that condemnation proceedings are *in rem*, not *in personam*). Congress has the power to limit the sovereign right of eminent domain to protect individual rights, but it declined to do so when it passed RFRA. The United States is not aware of any case upholding a challenge to federal condemnation on RFRA grounds.

Because the United States has demonstrated a need for immediate access to the Condemned Land and satisfied the requirements for transferring possession by filing a Declaration of Taking and depositing its estimate of just compensation, this Court should grant immediate possession of the interest sought. Granting possession of the Condemned Land to the United States will not impact the Diocese's use of the remainder property, its access to the shrine located at the summit of Mount Cristo Rey, or its right to challenge the amount of just compensation owed for the Condemned Land.

## IV. CERTIFICATE OF CONFERENCE

On May 20, 2026, the undersigned consulted with the Diocese, through counsel of record, and counsel confirmed that the Diocese opposes this motion. The undersigned also emailed the attorney for the defendant, Dona Ana County Treasurer, to request her client's position on the motion but has not yet received a response.

## V. CONCLUSION

Based on the foregoing reasons, the United States respectfully requests that the Court grant this motion and enter an order granting the United States immediate possession of the condemned

11

estates described in Schedule E of the Declaration of Taking upon deposit of the estimate of just

compensation (ECF No. 2-5).

Dated: May 20, 2026                                Respectfully submitted,

                                                   /s/ Charlotte Huffman
                                                   CHARLOTTE HUFFMAN
                                                     Bar No. 6296779 (IL)
                                                   ANNELISE PINTO
                                                     Bar No. 353929 (CA)
                                                   Land Acquisition Section
                                                   Environment and Natural Resources Division
                                                   P.O. Box 7611
                                                   Ben Franklin Station
                                                   Washington, DC 20002
                                                   Tel: (202) 598-9735
                                                   Fax: (202) 514-8865
                                                   Email: charlotte.huffman@usdoj.gov
                                                           Annelise.pinto@usdoj.gov

                                                   *Attorneys for Plaintiff United States of
                                                   America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2026, I electronically filed the foregoing United States' Opposed Motion for Order of Immediate Possession using the CM/ECF system and served a copy on all parties who are registered users of the CM/ECF system and entitled to receive automated notice of this filing.

In addition, I hereby certify that I will cause the foregoing to be sent to the following party:

*Via Email*
**Dona Ana County Treasurer**
c/o Cari Neill, Deputy County Attorney
845 N. Motel Blvd.
Las Cruces, NM 88007
carin@donaana.gov

Dated: May 20, 2026

*/s/ Charlotte Huffman*
Charlotte Huffman
United States Department of Justice