UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>14.259 ACRES OF LAND, MORE OR LESS, SITUATE IN DOÑA ANA COUNTY, STATE OF NEW MEXICO; CATHOLIC DIOCESE OF LAS CRUCES; AND DOÑA ANA COUNTY TREASURER,<br><br>Defendants. | Civil No. 2:26-CV-01458-KG-GBW |

**PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.     Introduction**

The United States of America filed this condemnation proceeding pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114, to acquire 14.259 acres of land[1] ("the Subject Property") necessary for Customs and Border Protection ("CBP") to help secure the United States/Mexico border within the state of New Mexico. The Catholic Diocese of Las Cruces ("Diocese") claims a full fee simple interest in the Subject Property and has filed an answer disputing the condemnation on numerous grounds. Federal law generally recognizes only one valid objection to a condemnation proceeding:  that the United States' land acquisition was not for a congressionally authorized public use. *See Wilson v. United States*, 350 F.2d 901, 906 (10th Cir. 1965) ("the nature or extent of the interest to be acquired is not reviewable"); *see also* Berman v.

---

[1] The United States acquired a fee simple interest in 11.822 acres of land identified as Tract EPT-STN-2001 and 1.554 acres of land identified as Tract EPT-STN-2001-1, and a non-exclusive, perpetual access easement in 0.883 acres of land identified as Tract EPT-STN-2001.

1

Parker, 348 U.S. 26, 32-33 (1954); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240-41 (1984).

Here, in its Complaint and Declaration of Taking, the United States set forth the specific statutory authority for CBP to obtain the Subject Property to secure the United States/Mexico border within the state of New Mexico. ECF Nos. 1-1, 1-2, 2-1, and 2-2. That alone demonstrates congressional authority for the take, and the Diocese has provided nothing more than general, conclusory objections in response.

Under such circumstances, courts in this Circuit and throughout the United States dismiss such objections and defenses as improper or grant judgment on the pleadings as to the legality of the condemnation. Accordingly, the United States respectfully requests that the Court enter judgment on the pleadings as to the lawfulness of this condemnation. Doing so will allow the litigation to proceed toward establishing the amount of just compensation the United States owes for the property it has condemned as required by the Fifth Amendment and as envisioned in the Declaration of Taking Act.

## II.    Procedural Background

The United States filed this condemnation action on May 7, 2026, under the authority of the Declaration of Taking Act, 40 U.S.C. § 3114. Pursuant to that act, the United States' Complaint and Declaration of Taking set forth both the statutory authority for, and the public purpose of, the condemnation, among the other requisite information. *See* 40 U.S.C. § 3114(a). These pleadings state in pertinent part:

SCHEDULE A
AUTHORITY
The property is taken under and in accordance with 40 U.S.C. §§ 3113 and 3114, which authorize the condemnation of land and the filing of a Declaration of Taking; the Act of Congress approved September 30, 1996, as Public Law 104-208, Division C, Section 102, 110 Stat. 3009-546, 3009-554-55, as amended and codified at 8 U.S.C. § 1103(b) & note; and the Act of Congress approved July 4,

2025, as Public Law 119-21, tit. IX, sec. 90001, 139 Stat. 72, 357-58, which appropriated the funds that shall be used for the taking.

ECF Nos. 1-1, 2-1.

SCHEDULE B
PUBLIC PURPOSE

The public purpose for which said property is taken is to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the state of New Mexico.

ECF Nos. 1-2, 2-2.

The remainder of the United States' Complaint and Declaration of Taking includes each of the documents required by both the Declaration of Taking Act and FED. R. CIV. P. 71.1. *Compare* ECF Nos. 1-2 with 40 U.S.C. § 3114(a) and FED R. CIV. P. 71.1(c). Also, as required by the Declaration of Taking Act, the United States included an estimate of just compensation. ECF No. 2-6; 40 U.S.C. § 3114(a)(5). Here, it estimated just compensation to be $183,071, and deposited that sum into the Court registry on June 24, 2026. *See* ECF No. 10. Upon the deposit of the estimate of just compensation, the United States acquired title to the Subject Property by operation of law. *See* 40 U.S.C. § 3114(b)-(c).

On July 6, 2026, the Diocese filed its Answer in which it listed general "responses" to each paragraph in the United States' Complaint and Declaration of Taking and listed three "objections and affirmative defenses" to the condemnation. ECF No. 46. The Diocese objects to the condemnation on three grounds: (1) the taking's alleged unconstitutionality under the First Amendment's Free Exercise Clause; (2) the taking's alleged invalidity under the Religious Freedom Restoration Act, 42 U.S.C. 2000bb-1(c); and (3) that just compensation for the Subject Property exceeds the United States' estimate of just compensation. *See id*. However, as discussed below, federal law recognizes only one valid basis for a landowner to object to a condemnation

3

filed pursuant to the Declaration of Taking Act: that the United States' acquisition is not for a Congressionally authorized public use.

Here, Congress has authorized CBP to condemn property for the purpose of constructing, installing, operating and maintaining infrastructure designed to help secure the United States/Mexico border, meaning that the Diocese's objections fail as a matter of law. 8 U.S.C. § 1103(b) & note; Pub. L. 119-21, tit. IX, sec. 90001, 139 Stat. 72, 357-58.

### III.    Legal Standard

Congress intended the Declaration of Taking Act to be an "expeditious procedure" to acquire the lands necessary for a public purpose. *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 4 (1984). After the filing of the Declaration of Taking and the deposit of the estimated value of the land in the Court Registry, the "subsequent judicial proceedings" determine "the exact value of the land" and the landowner is "awarded the difference (if any) between the adjudicated value of the land and the amount already received by the owner, plus interest on that difference." *United States v. 50 Acres of Land*, 469 U.S. 24, 26 n. 3 (1984) (citing *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 5 (1984)).

FED. R. CIV. P. 71.1 governs all federal condemnation proceedings. FED. R. CIV. P. 71.1(a). It provides that any defendant with "an objection or defense to the taking" of the property must, "within 21 days after being served," serve an answer to the complaint identifying "the property in which the defendant claims an interest," the "nature and extent of that interest," and any and all "objections and defenses" the defendant has to the taking. FED. R. CIV. P. 71.1(e)(2). "A defendant waives all objections and defenses not stated in its answer," and "[n]o other pleading or motion asserting an additional objection or defense is allowed." FED. R. CIV. P. 71.1(e)(3). "After the pleadings are closed –but early enough not to delay trial – a party may move for judgment on the

pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party has clearly established that no material issue of fact remains to be resolved, and the party is entitled to judgment as a matter of law. *Heisinger v. Vill. of Tularosa,* No. 22-CV-0366 KG/GBW, 2023 U.S. Dist. LEXIS 49429, at *3 (D.N.M. Mar. 22, 2023).

In condemnation proceedings, "[t]he only question for judicial review" at the pleading stage is "whether the purpose for which the property was taken is for a Congressionally authorized public use." *United States v. 0.95 Acres of Land*, 994 F.2d 696, 698 (9th Cir. 1993); *Shoemaker v. United States,* 147 U.S. 282, 298 (1893) ("while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted. . .); *see also United States v. 397.51 Acres*, 692 F.2d 688, 692 (10th Cir. 1982) ("In the absence of bad faith, a condemnation for a public use is a matter for the legislative branch and not open to judicial determination. The nature or extent of the interest to be acquired is not reviewable.")

A court in the Eastern District of California recently applied this standard in granting the United States' motion for judgment on the pleadings in a pending condemnation proceeding. There, the court emphasized that, "[a] federal court has jurisdiction to review only one aspect of condemnation actions: is the purpose for which the property was taken a Congressionally authorized public use?" *United States v. 14.368 Acres, More or Less*, No. 1:24-cv-00185 JLT CDB, 2025 LX 465165, at *7 (E.D. Cal. Oct. 6, 2025) (quoting *0.95 Acres of Land*, 994 F.2d at 699). The court explained:

> [i]t is uncontroverted that the courts are not vested with authority judicially to review the power of Congress to authorize acquisitions of land. Once an administrative agency designated by Congress has been delegated authority to take lands for a public use, the courts have no jurisdiction to review actions of that

administrative agency in its determination as to the parcels of land that are or are not necessary to the project. The necessity of taking or appropriating private property for public use is legislative in nature and one over which the courts lack jurisdiction.

*14.368 Acres* at *7-8 (quoting *United States v. 80.5 Acres*, 448 F.2d 980, 983 (9th Cir. 1971)); *see also Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240-41 (1984).

Thus, if the complaint and declaration of taking demonstrate that a condemnation was for a congressionally authorized public use, judgment on the pleadings in the United States' favor is appropriate regarding all landowner objections or affirmative defenses questioning the condemnation's legality. *See id.* at *5-17. Additionally, as explained below, each of the Diocese's objections and defenses also fail individually as a matter of law. The Court may enter judgment as to all improper objections, defenses, and allegations in a condemnation – not just affirmative defenses. *United States v. 14.02 Acres of Land*, 547 F.3d 943, 956, n. 4. (9th Cir. 2008).

## IV.     Argument

Because the United States condemned the Subject Property for a congressionally authorized public use, the Diocese's objections and affirmative defenses to the legality of this condemnation lack any basis in law. Accordingly, judgment on the pleadings in favor of the United States on the issue of the condemnation's legality is appropriate. Once the Court has ruled on the legality of the condemnation, the litigation may focus on determining the amount of just compensation the United States owes for the land it has acquired, as required by the Fifth Amendment and as envisioned in the Declaration of Taking Act. *See* U.S. Const. amend V; 40 U.S.C. § 3114(c)(1).

### A.  This condemnation is for a congressionally authorized public use.

Congress authorized this condemnation. The United States' Complaint and Declaration of Taking both recite the statutory authority underlying this exercise of eminent domain. *See* ECF

6

Nos. 1-1, 2-1. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Division C, Section 102, 110 Stat. 3009-546, 3009-554-55, as amended and codified at 8 U.S.C. § 1103(b) & note (Sept. 30, 1996), specifically authorizes DHS to acquire by purchase, gift, or condemnation:

> [A]ny interest in land, including temporary use rights, adjacent to or in the vicinity of an international land border when the [Secretary of DHS] deems the land essential to control and guard the boundaries and borders of the United States against any violation of this chapter. [2]

With respect to fencing and related infrastructure, Congress directed that the Secretary of DHS:

> *[S]hall take such actions as may be necessary to install additional physical barriers* and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States.

8 U.S.C. § 1103(b) & note A (Sept. 30, 1996) (emphasis added).

Here, Congress appropriated funds to DHS for the following elements of the border infrastructure and wall system:

> (1) Construction, installation, or improvement of new or replacement primary, waterborne, and secondary barriers.
> (2) Access roads.
> (3) Barrier system attributes, including cameras, lights, sensors, and other detection technology.
> (4) Any work necessary to prepare the ground at or near the border to allow U.S. Customs and Border Protection to conduct its operations, including the construction and maintenance of the barrier system.

Pub. L. 119-21, tit. IX, sec. 90001, 139 Stat. 72, 357-58 (July 4, 2025).

It is undisputed that this condemnation is for a public use. The United States condemned

---

[2] The text in 8 U.S.C. § 1103(b), (g)(1) and certain provisions in the Note to 8 U.S.C. §1103 refer to the Attorney General's authority to acquire land for border security purposes. That said, the relevant functions of the Attorney General concerning immigration and border security have been transferred to DHS. See 6 U.S.C. §§ 202(2), 251, 552(d), 557.

the Subject Property, on behalf of DHS, "to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the state of New Mexico." ECF Nos. 1-2, 2-2. This is plainly a public use consistent with the requirements of federal condemnation law. *See United States v. 1.16 Acres of Land,* 585 F. Supp. 2d 901, 905 (S.D. Tex. 2008) (explaining the statutory layout of the need for border wall and the judiciary's limited role in second guessing it)*; Berman*, 348 U.S. at 32-33; *Midkiff*, 467 U.S. at 240-41.

The Diocese's Answer provides no information that would call into question either the statutory authority or public purpose for this condemnation as described in the United States' Complaint or Declaration of Taking. Instead, it includes only general denials. But a plain reading of the relevant statutes demonstrates this condemnation to be congressionally authorized. And CBP acquiring land for border security is plainly "rationally related to a conceivable public purpose." *Midkiff*, 467 U.S. 229 at 241 ("Where the exercise of the eminent domain power is rationally related to a conceivable public purpose, a compensated taking is not prohibited by the Public Use Clause."). Accordingly, as a matter of law, and as established by the pleadings, this condemnation is for a congressionally authorized public use.

**B.  Neither the First Amendment nor the Religious Freedom Restoration Act is a Defense to the Federal Government's Proper Exercise of Eminent Domain.**

The Diocese broadly asserts that the United States' taking is unconstitutional under the First Amendment's Free Exercise Clause and invalid under RFRA. Objs. And Aff. Defenses at ¶¶ 14-15. Because the entirety of their objections and affirmative defenses must be contained in their Answer pursuant to Fed. R. Civ. P. 71.1(e)(3), those allegations are legally insufficient. *See S. Pac. Land Co. v. United States*, 367 F.2d 161 (9th Cir. 1966); *United States v. 729.773 Acres of Land*, 531 F. Supp. 967, 973 (D. Haw. 1982) (finding landowner failed to sufficiently plead bad faith).

8

*See also United States v. 416.81 Acres of Land*, 514 F.2d 627, 632 (7th Cir. 1975) ("Only in cases of egregious bad faith will the right to condemn be denied."). District courts regularly reject similarly broad constitutional challenges in other condemnations, including condemnations nearly identical to this one where the United States has condemned land along the United States – Mexico border for the construction of border barrier. *See United States v. 24.728 Acres of Land, More or Less, Situate in Starr Cnty., Texas*, 2025 WL 3146046, at *2-4 (S.D. Tex. Oct. 15, 2025); *United States v. 23.311 Acres of Land*, No. 7:19-CV-00407, 2020 WL 4724332, at *5-7 (S.D. Tex. Mar. 4, 2020).

Moreover, the Diocese's reliance on the First Amendment and RFRA fails because neither claim is a defense to condemnation. The central premise of the Diocese's Answer (and of their Response in Opposition to the United States' Motion for Order of Immediate Possession, ECF No. 36) is that their land should be granted special protection from condemnation because it is owned by a religious entity. That premise is wrong and unsupported by any case law. The First Amendment is not a shield from condemnation; it does not grant churches or newsrooms or places of assembly immunity from condemnation. The only constitutional limitation on condemnation is the just compensation clause of the Fifth Amendment, which provides that when the Government exercises its sovereign right, it must pay the landowner just compensation for the land it has acquired.

The Diocese is not the first religious institution from whom the federal government has condemned land. Going only by reported opinions, it is at least the sixth. *See United States v. 564.54 Acres of Land, More or Less, In Monroe & Pike Ctys., Com. of Pennsylvania,* 506 F.2d 796 (3d Cir. 1974) (condemnation of recreational camps owned by Southeastern Pennsylvania Synod of the Lutheran Church); *United States v. 3.25 Acres of Land, etc., in Seneca Cnty., N.Y.,*

53 F. Supp. 884 (W.D.N.Y. 1943) (condemnation of property owned by First Baptist Church of Romulus); *United States v. Grace Evangelical Church of S. Providence Ridge*, 132 F.2d 460 (7th Cir. 1942) and *United States v. Two Acres of Land, More or Less, in Will Cnty., Ill.*, 144 F.2d 207 (7th Cir. 1944) (condemnation of church for construction of World War II ordinance factory); *United States v. Eighty Acres of Land in Williamson Cnty.*, 26 F. Supp. 315 (E.D. Ill. 1939) (condemnation of land for reservoir that would result in destruction of churches and burial grounds); *United States v. 4.43 Acres of Land, More or Less, Situate in Tarrant Cnty., State of Tex.*, 137 F. Supp. 567, 571 (N.D. Tex. 1956) (condemnation of easement over Hillcrest Baptist Church and other properties allowing for flight of military aircraft at low altitude).

In none of those cases did a federal court invalidate the United States' condemnation of church property—or suggest that the First Amendment offers any protection against such takings. If the Diocese's First Amendment defense had legal merit, federal courts would have blocked each of those condemnations. Instead, the only issue in every case was the amount of just compensation owed to the church.

In *Williamson County,* the court considered a motion to dismiss filed by the landowner, in which the landowner argued, *inter alia*, that the condemnation was unconstitutional in part because the taking would destroy several churches and burial grounds. 26 F. Supp. at 317. The court denied the motion to dismiss, finding that the authority for the taking was "supported by impregnable legislation, administrative and judicial authority...the acts, conclusions and other exercise of powers under the legislation here in question of and by the Acting Secretary of Agriculture were as lawful and effectual as if the Secretary himself had acted." *Id*. at 318–19. Put differently, it did not matter that the condemnation included a church, only that it was effected pursuant to a valid statute and by an official acting with proper authority.

10

In *564.54 Acres of Land*, the Third Circuit explicitly discussed the First Amendment. There, the United States condemned several recreational camps owned and operated by the Lutheran Synod. The parties disputed the proper measure of just compensation. The United States contended that the measure should be the land's fair market value, meaning that just compensation would be what someone would pay for an unprofitable camp. The Lutheran Synod contended that just compensation should be the value of a substitute facility because the fact that the camps are unprofitable ignores how they are used by the religious organization. The court opined on the proper determination of just compensation, explaining:

> Whether the Lutheran Synod operates camping facilities at a loss because it believes camping builds character, or because it feels a charitable obligation to afford recreational opportunities to persons who would not otherwise be able to afford them, it seems clear that the reason for operating the camps is related to the Synod's religious mission. Thus the question presented is the extent to which owners of single purpose facilities, operated not-for-profit for a religious or charitable purpose (and having no ready market) are entitled to be indemnified when the federal government condemns the facilities. A closely analogous case would be the condemnation of an ancient church building still in active use for religious purposes.

*564.54 Acres of Land*, 506 F.2d at 798–99.

The Third Circuit fully understood the religious nature of the land at issue and yet, at no point did it entertain the idea that the First Amendment would act as a defense against the condemnation. *See id.* Instead, it explained that the only way the First Amendment might be an issue is if the United States had specifically chosen to condemn privately owned religious "community facilities" rather than state or municipally owned ones as a way of paying a reduced amount of just compensation. *Id.* at 801, n. 4. Here, given that the United States-Mexico border is the Diocese's southern property line, the United States' selection of this land to build border infrastructure is obvious and there literally is no alternate property – owned by a municipality or anyone else – on which to build this particular segment of the border fence.

As the Supreme Court has repeatedly held, the only defense to a federal condemnation action is either the lack of congressional authorization or public purpose. *Berman*, 348 U.S. at 32 (citing *Old Dominion Land Co. v. U.S.*, 269 U.S. 55, 66, (1925)). In the few instances where landowners have alleged a constitutional violation as a result of a federal eminent domain action, the courts reject those defenses, stating that it is not the judiciary's role to second guess the directives of Congress.

> [T]he legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation … . This principle admits of no exception merely because the power of eminent domain is involved. The role of the judiciary in determining whether that power is being exercised for a public purpose is an extremely narrow one.

*Id.*

If a condemnation action is legally authorized by Congress, it is valid and not subject to judicial review. *See United States v. Eighty Acres of Land in Williamson Cnty.*, 26 F. Supp. 315, 320 (E.D. Ill. 1939) ("If the purposes are public and within the legislative powers of Congress, and within the purview of valid existing federal legislation…the government has the lawful right to proceed thereunder regardless of any view whatsoever this court may have with reference to the wisdom or feasibility of the particular project.).

Regardless of religious implications, the constitutionality of the authorizing statute remains the primary focus. *See Williamson County  Id*. at 317. (Despite defendants' allegations that taking would destroy churches and burial grounds, court held that the authority for the taking was "supported by impregnable legislation, administrative and judicial authority…"). *Id*. at 318–19. In *Adorers of the Blood of Christ United States Province v. Transcon. Gas Pipe Line Co LLC*, 53 F.4th 56, 60 (3d Cir. 2022), defendants alleged First Amendment and RFRA claims to challenge a federal taking for a fossil fuel pipeline they asserted violated their religious beliefs. Although the

12

court's decision centered on a procedural error—defendants' neglected to first appeal to the relevant energy commission—its core rationale applies: defendants may not invoke other federal statutes to circumvent "the specific procedure prescribed by [Congress.]" *Id*.

For these reasons, the First Amendment or RFRA cannot be the basis for invalidating a condemnation for a congressionally-authorized public purpose.

### C. The alleged inadequacy of the estimate of just compensation is not a valid defense to the taking.

A court lacks jurisdiction to review the adequacy of the United States' deposit of estimated just compensation. *See In re United States*, 257 F.2d 844, 858-59 (1958). The purpose of a condemnation proceeding is to determine actual just compensation, rather than estimated just compensation. "[T]he deposit of estimated compensation by the government is 'no evidence of value' and has 'no bearing whatsoever on value.'" *Evans v. United States*, 326 F.2d 827, 829 (8th Cir. 1964) (citation omitted). Just compensation is a judicial rather than an administrative determination. *See Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327 (1893) . "The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial." *Id*. If it is later determined at trial that the amount deposited was less than the just compensation owed, the United States must deposit the deficiency, plus pay interest on the amount not previously deposited. 40 U.S.C. §§ 3114 and 3116; *City of Oakland v. United States*, 124 F.2d 959, 964 (9th Cir. 1942). As this case proceeds, the Diocese will have an opportunity to present evidence in support of their position on the amount of just compensation owed for the property taken. But they may not challenge the estimate of just compensation deposited in their Answer or raise it as a defense to the taking. *24.728 Acres of Land,* 2025 WL

3146046, at *5 ("Defects in the just compensation estimate, to the extent they exist, are not a defense to a condemnation action.") (citation omitted).

## V.       Judgment on the pleadings is appropriate.

Because the pleadings demonstrate this condemnation to have been for a congressionally authorized public use, and because the Diocese has put forward no legally valid objection to the United States' exercise of eminent domain, judgment on the pleadings as to the condemnation's legality is appropriate. *See United States v. 14.02 Acres of Land,* No. CV-F-03-6019 REC, 2004 U.S. Dist. LEXIS 33293 (E.D. Cal. June 18, 2004); *24.728 Acres of Land,* 2025 WL 3146046, at *2-5; *United States v. An Easement & Right-of-Way Over 3.28 Acres of Land, More or Less, in Lee Cnty., Mississippi,* 2017 WL 916415, at *6 (N.D. Miss. Mar. 7, 2017); *Wash. Metro. Area Transit Auth. v. 6,627 Square Feet of Land*, 2022 WL 2438549, at *6-9 (D.D.C. July 5, 2022); *United States v. 2.9 Acres of Land*, 554 F. Supp. 529, 531 (D. Mont. 1982); *Calf Island Cmty. Tr., Inc. v. Young Mens Christian Assoc. of Greenwich*, 392 F. Supp. 2d 241, 246-52 (D. Conn. 2005).

The Court's granting of judgment on the pleadings will not impair the Diocese's ability to receive just compensation for the United States' acquisition of the Subject Property, as required by the Fifth Amendment. Indeed, Rule 71.1 guarantees it that right even if it had not filed an answer at all: "[A]t the trial on compensation, a defendant—whether or not it has previously appeared or answered—may present evidence on the amount of compensation to be paid and may share in the award." FED. R. CIV. P. 71.1(e)(3). Instead, by ruling on the lawfulness of the condemnation now, the Court will ensure that the ligation remains focused on the issue of just compensation, resulting in the Diocese efficiently receiving any additional funds it may be owed.

## VI.      Conclusion

Congress authorized DHS to condemn property for border security. *See* 8 U.S.C. § 1103(b) & note. This condemnation is for a legitimate, authorized public use: to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the state of New Mexico Accordingly, the condemnation, filed consistent with the requirements of the Declaration of Taking Act, is legal. Because federal law recognizes no other valid objection that a landowner may lodge to prevent the Government's use of its eminent domain power, the United States respectfully requests that the Court enter judgment on the pleadings as to the lawfulness of the taking.

By finding  the condemnation lawful, and concluding that the Diocese's Answer raises no valid objections or affirmative defenses, the Court will narrow the proceedings—including discovery and future motion practice—to its proper focus: determining the just compensation owed for the United States' acquisition of the Subject Property.

DATED: July 20, 2026                          Respectfully submitted,

UNITED STATES OF AMERICA

By: s/ Charlotte Huffman

CHARLOTTE HUFFMAN
Bar No. 6296779 (IL)
ANNELISE M. PINTO
Bar No. 353929 (CA)
Land Acquisition Section
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20002
Telephone: (202) 305-0282
Facsimile: (202) 514-8865
E-mail: charlotte.huffman@usdoj.gov
          annelise.pinto@usdoj.gov

*Attorneys for Plaintiff United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I electronically filed the foregoing United States'

Motion for Judgment on the Pleadings using the CM/ECF system and served a copy on all parties

who are registered users of the CM/ECF system and entitled to receive automated notice of this

filing.

*/s/ Charlotte Huffman*
CHARLOTTE HUFFMAN
U.S. Department of Justice